IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| JOHN M. LANZA and | * | CHAPTER 7 |
| SUSAN P. LANZA, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:10-bk-06272MDF |
| ROBERTA A. DeANGELIS, | * | |
| UNITED STATES TRUSTEE, | * | |
|     Movant | * | |
| | * | |
|     v. | * | |
| | * | |
| JOHN M. LANZA and | * | |
| SUSAN P. LANZA, | * | |
|     Respondents | * | |
| | * | |

## OPINION

The United States Trustee (the "UST") requests dismissal of the bankruptcy petition of John M. and Susan P. Lanza ("Debtors") alleging that, given the totality of their financial circumstances, their petition is an abuse of Chapter 7. Debtors assert in response that because their income is below the state median for a four-person household, their case may not be dismissed under § 707(b)(3) simply because they have the ability to repay their creditors. At a hearing on November 22, 2010, the parties argued their positions on the legal issues. The Court requested that they submit the matter on stipulated facts and briefs, which were filed on December 13, 2010.[1]

---

[1] I have jurisdiction to hear this matters pursuant to 28 U.S.C. §§157 and 1334. A motion to dismiss a Chapter 7 case is a core matter pursuant to 28 U.S.C. §157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

# I. Factual Findings

On July 30, 2010, Debtors filed a voluntary petition for relief under Chapter 7. Debtors are individuals whose reported debts are primarily consumer in nature. At the time they filed their Chapter 7 petition, Debtors' annual income was below the state median income for their household size.[2] Their unsecured debts total $52,788, including student loan debts totaling $24,481.

The parties have stipulated to two sets of facts regarding Debtors' expenses. The first category pertains to Debtors' housing expenses. As reported in their schedules, Debtors have net monthly income of $5004 and net monthly expenses of $5192. Their expenses include a monthly mortgage payment of $1173 for a property located in Florida, where they lived until September 2008. Debtors were unable to sell the Florida property because its fair market value was significantly less than the liens against it; specifically, the home was valued at $69,500 with liens of $201,269. Debtors rented the property in 2008, 2009, and 2010, but filed a statement with the Court that they intend to surrender their former residence to the mortgagee.[3] In addition to their residence, Debtors held an interest in a Florida timeshare, which required a monthly payment of

---

[2]Debtors' Form 22 (the "Means Test") states that their household consists of four (4) persons. On Schedule G, Debtors state that they are co-obligors on a loan to their son, Adam, whose address is the same as Debtors. Although not explicitly stated in the stipulated facts, the Court assumes that Debtors two adult children live with them. Debtors' Means Test reports current monthly income of $5987.17, or $71,846.04 annually. The median annual income for a four-person household in Pennsylvania for cases filed between March 31, 2010 and October 31, 2010 was $77,590. *Census Bureau Median Family Income By Family Size*, justice.gov/ust, http://www.justice.gov/ust/eo/bapcpa/20100315/bci_data/median_income_table.htm (last visited March 21, 2011). Therefore, Debtors' annual income is below the median annual income for a four-person household in Pennsylvania.

[3]PNC Bank, National Association was granted relief from the automatic stay on August 13, 2010 with Debtors' concurrence.

$255. Debtors also intend to surrender the timeshare interest. At the time they filed their bankruptcy, Debtors were contractually obligated to make the monthly payments for both the residence and the timeshare. Since the commencement of the bankruptcy case, Debtors have not made any payments on either obligation and do not expect to make any further payments. Debtors currently reside in a parsonage in Pennsylvania and do not incur housing expenses.

The second category of relevant facts concern educational expenses for Debtors' child. Debtors make a monthly student loan payment of $564 and a monthly college tuition payment of $546 for the benefit of their 21-year-old daughter.

## II. Discussion

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was enacted by Congress in 2005 "to correct perceived abuses in the bankruptcy system." *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 721 (2011). BAPCPA includes a Means Test "to help ensure that debtors who can pay creditors do pay them." *Id*. Prior to BAPCPA's enactment, consumer debtors could elect either to file a plan to repay creditors under Chapter 13 or seek straight bankruptcy in Chapter 7. A debtor's ability to elect a particular bankruptcy chapter is now more limited.

To ensure that debtors who can pay do pay, Congress made significant modifications to § 707(b).[4] Section 707(b)(1) provides that "a court . . . may dismiss a case if it finds that the

---

[4]"The Bankruptcy Reform Act of 2005 asks the very fundamental question of whether repayment is possible by an individual. It is this simple: If repayment is possible, then he or she will be channeled into chapter 13 of the Bankruptcy Code which requires people to repay a portion of their debt as a precondition for limited debt cancellation . . . . This bill does this by providing for a means-tested way of steering people . . . who can repay a portion of their debts away from chapter 7 bankruptcy." Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 Am. Bankr. L.J. 231, 231 (2005) (quoting Statement of Senator Charles Grassley, March 1, 2005,

3

granting of relief would be an abuse of the provisions of this chapter." Section 707(b) provides two processes to evaluate whether a case is an abuse of Chapter 7; these processes are found in § 707(b)(2) and § 707(b)(3). Section 707(b)(2) defines the Means Test, which requires debtors to perform certain mathematical computations to determine whether they have disposable income. If a debtor has disposable income, a bankruptcy court must presume that the case is an abuse of the chapter. This purely mathematical test channels debtors away from Chapter 7 and into Chapter 13 unless they can rebut the presumption of abuse. However, a debtor and his spouse whose income is equal to or below the median family income for the same size household in the applicable state is not subject to the Means Test. 11 U.S.C. § 707(b)(7). When the presumption of abuse does not arise or is rebutted and a motion to dismiss is filed under § 707(b)(3), the bankruptcy court is required to "consider whether the debtor filed his petition in bad faith or whether the totality of the circumstances of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3).

    *A.*    *Reconsideration of the holding in* Athens

In the Factual Findings, the parties have stipulated that Debtors' current monthly income is below the median income for a four-person household in Pennsylvania. Therefore, under 11 U.S.C. § 707(b)(2), they were not required to complete the Means Test when they filed their Chapter 7 petition, and their case is not subject to the statutory presumptions regarding abuse. Debtors' argument is correct as far as it goes. However, Debtors further argue that because their case is not subject to the Means Test, the Court may not examine their schedules of income and expenses to determine whether, when considering the totality of the circumstances, they have the

---

151 Cong. Rec. S1856).

ability to pay a significant portion of their unsecured debt. The UST counters that a court may find a case to be abusive under § 707(b)(3) even when the § 707(b)(2) presumptions regarding abuse are inapplicable. As I have ruled in a prior decision, I agree with the UST.

In *In re Athens*, 2007 WL 6376132 (Bankr. M.D. Pa. Aug. 1, 2007) (No. 1:06-BK-02293MDF), the UST filed a motion to dismiss the Chapter 7 case of a debtor whose monthly income was below the state median. In response to the UST's motion, the debtor "counter[ed] that because his household income is below the state median, he should not be subject to dismissal under § 707(b)(3) on the sole basis of the ability to pay." *Id.* at *3. In light of the specific language of § 707(b)(3), I found this argument to be unpersuasive. Section 707(b)(3) specifically states that in cases in which the presumption of abuse "does not arise or is rebutted," a court must consider whether under the totality of the circumstances, a "debtor's financial situation demonstrates abuse." Accordingly, I held that a debtor's "financial situation" clearly includes his ability to pay his creditors out of future income. In reaching this conclusion, I relied on Judge Walrath's decision in *In re Paret,* 347 B.R. 12 (Bankr. D. De. 2006).

> Debtors . . . are only safe from a presumption of abuse that might otherwise arise under paragraph (b)(2) and are not beyond the reach of paragraph (b)(3)'s comprehensive, statutorily-mandated inquiry into their fitness for chapter 7 relief. . . . When no presumption of abuse arises under paragraph (b)(2), the Court concludes that the Code mandates consideration of a debtor's ability to pay his creditors within the test articulated in paragraph (b)(3).

*Id*. at 15 (citing *In re Pak,* 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006).

Section 707(b)(7) limits the application of § 707(b)(2) to above median debtors, but there is no provision in either (b)(2) or (b)(3) that limits the review of a debtor's financial circumstances when determining whether a case is abusive under the totality of the

5

circumstances. "Section 707(b)(2)(A) creates a statutory presumption of abuse in certain circumstances but offers no safe harbor to those debtors with respect to whom this statutory presumption does not arise." *In re Zaporski*, 366 B.R. 758, 770 (Bankr. E.D. Mich. 2007) (quoted in *In re Boule*, 415 B.R. 1, 4 (Bankr. D. Mass. 2009)). Other courts holding that § 707(b)(3) may be applied to dismiss the case of a "below-median" debtor include: *In re Corridori*, 2010 WL 3522122 (Bankr. D. Mass. Sept. 1, 2010), *In re Riley*, 2010 WL 3718017 (Bankr. D. Mass. Sept. 14, 2010); *In re Myers*, 2009 WL 1456921 (Bankr. M.D. N.C. May 22, 2009), *In re Hageney*, 422 B.R. 254 (Bankr. E.D. Wash. 2009), *In re Latone*, 2008 WL 5049460 (Bankr. D. Ariz. Oct. 23, 2008), *In re Pfiefer*, 365 B.R. 187 (Bankr. D. Mont. 2007), *In re Richie*, 353 B.R. 569, 574 (Bankr. E.D. Wis. 2006), *In re Pak,* 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006), *In re Hill,* 328 B.R. 490, 507 (Bankr. S.D. Tex. 2005).

Debtors have asked me to revisit my holding in *Athens* because in *In re Walker*, 381 B.R. 620 (Bankr. M.D. Pa. 2008), Judge Opel reached the opposite conclusion on similar facts. In *Walker*, Judge Opel held that because a debtor's income and expenses are analyzed within the Means Test under § 707(b)(2), a debtor's ability to pay may not be considered when reviewing a case for abuse under § 707(b)(3). Judge Opel based his decision, in part, on the reasoning of the Court of Appeals for the Third Circuit in *Perlin v. Hitachi Capital America Corp. (In re Perlin)*, 497 F.3d 364 (3d Cir. 2007). In *Perlin*, the Court of Appeals ruled that the statutory canon of negative implication was not useful when construing the meaning of § 707(a) within the context of the section because subsections (a) and (b) address different issues. Because the inclusion of the Means Test in § 707(b) did not create an implication that a debtor's income and expenses could not be considered in § 707(a), the Circuit Court determined that a bankruptcy court may

6

consider a debtor's income when analyzing whether a case should be dismissed for "bad faith" under § 707(a).

The canon of negative implication provides that the enumeration of a group or series of items excludes items not mentioned. *United States v. Vonn*, 535 U.S. 55, 65 (2002). It "applies only when the expressed and unmentioned items are part of a 'commonly associated group or series.'" *Perlin*, 497 F.3d at 370 (quoting *Vonn*, 535 U.S. at 65). In finding that the doctrine was inapplicable, the Third Circuit held that there was a significant difference between dismissals under subsection (a), which applies to all debtors, and dismissals under subsection (b), which applies only to consumer debtors.

Judge Opel interpreted the guidance of the Third Circuit to mean, conversely, that the doctrine would be applicable to paragraphs within subsection (b) because both paragraph (2) and (3) apply to cases filed by consumer debtors. Although *dicta* in *Perlin* may be understood as supporting this conclusion, I do not find the canon of negative implication to be helpful in this case. Clear guidance provided by the Supreme Court on the application of the canon demonstrates that the doctrine is inapposite to an analysis of § 707(b)(2) and (b)(3). In *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73 (2002), the Court observed that the canon of negative implication should not be invoked when its application would conflict with the text of the statute. For example, if a statute uses expansive language to describe categories, significant discretion resides in the decision-maker. *Id.* at 80. When a court is given broad discretion, it is difficult to conclude that an unspecified item was intentionally omitted. Also, application of the canon

7

generally is limited to situations when "a series of two or more terms or things . . . should be understood to go hand in hand. . . ." *Id.* at 81 (citations omitted).[5]

Section 707(b)(3) uses the expansive categories of "bad faith" and the "totality of the circumstances." Neither of these terms have precise definitions and bankruptcy courts have developed numerous formulations to define both terms. Further, each subsection addresses a different issue and there is no series of terms or things that "go hand in hand" in one subsection that is omitted in the other. Section 707(b)(2) creates a presumption of abuse for certain above median debtors and § 707(b)(3) provides for the dismissal of a case filed by any consumer debtor if the case was filed in bad faith or if the totality of the circumstances of the debtor's financial situation demonstrates abuse. Thus, I find no basis to conclude that Congress intended to exclude consideration of a debtor's ability to repay debts when considering a motion to dismiss under § 707(b)(3). Finding that it is inappropriate to apply the doctrine of negative implication to an analysis of the text, I decline to reconsider my earlier holding that the existence of disposable income available to pay creditors may be considered when examining the totality of the circumstances under § 707(b)(3).

B. *Debtors' Ability to Repay Unsecured Debt*

Debtors do not dispute that their current expenses do not include a housing expense. Further they admit that they are surrendering their interest in a Florida timeshare. By eliminating

---

[5]*Compare In re Starling*, 359 B.R. 901, 914 (Bankr. N.D. Ill. 2007) (Omission of "debtor" from list of persons specifically named in statute – "the trustee, a creditor, or the United States trustee" – did not exclude debtor from seeking revocation of discharge under § 727(d). Debtor not within "associated group or series" listed in the statute.), *and In re Douglas Young Builder, Inc.*, 2009 WL 2827959 (Bankr. E.D. Pa. September 1, 2009) (Canon applied, there is no general good faith exception based on prior case law because current statutory provision (§ 362(k)) limits exception to good faith belief that § 363(h) applies).

these two expenses Debtors have reduced their expenditures from $5192 per month to $3764. With these adjustments alone Debtors have $1240 in disposable income each month that could be committed to a Chapter 13 plan.

The UST also has asserted that it is an abuse of Chapter 7 for Debtors to expend $1110 per month in student loan and tuition payments for the benefit of their adult daughter rather than commit those funds to the payment of creditors. It is well established in this district that expenditures for the benefit of persons whom a debtor has no duty to support are not reasonable and necessary expenses. *In re Shores*, at *4 (citing *In re Miller,* 302 B.R. 495, 502 (Bankr. M.D. Pa. 2003); *In re Boyd*, 378 B.R. 81 (Bankr. M.D. Pa. 2007) (Judge Thomas); *In re Ponce*, 2009 WL 3335871 (Bankr. M.D. Pa. Oct. 19, 2009) (Judge Opel) (college tuition and other expenses for adult child not reasonable in context of disposable income calculation under §1325(b)(1)(B)). *See also McGowan v. McDermott*, 2011 WL 834046, *1 (N.D. Ohio); *U.S. Trustee for Eastern District of Virginia v. Harrelson*, 323 B.R. 176, 179 (W.D. Va. 2005); *In re Coleman*, 231 B.R. 760, 763 (Bankr. D. Neb. 1999); *but see In re Mitchell*, 2010 WL 5375954, *8 (Bankr. E.D.N.C.) (Young adult children studying for undergraduate degrees considered debtors' dependents). I reiterate my holding that bankruptcy debtors are responsible for paying their creditors before they may make discretionary expenditures on behalf of their of adult children. Accordingly, the $1110 Debtors are paying for their daughter's school expenses should be paid to creditors. Adding these educational expenditures to the non-existent housing expenses, Debtors have approximately $2500 in disposable income per month with which to fund a plan. I note

9

further that a plan funded with a payment of $1,467 per month for thirty-six months would repay all of Debtors' unsecured debts, which total $52,788.[6]

When deciding a motion to dismiss under § 707(b)(3), I have analyzed the totality of the circumstances according to a list of factors developed by the Courts of Appeals for the Fourth and Sixth Circuits.[7] *See In re Shores*, 2010 WL 5125328, *3 (Bankr. M.D. Pa. Dec. 9, 2010) (No. 1:09-bk-08905MDF). These criteria require an examination of a debtor's pre-petition financial conduct and life-circumstances along with his current financial situation and future prospects to provide an understanding of the "totality" of his financial circumstances. The stipulation of facts submitted by the parties does not address most of these criteria (other than

---

[6]The record is unclear as to whether the student loans listed in Schedule F are obligations of one or both Debtors or whether they are obligations of Debtors' adult children. Therefore, I cannot determine with certainty whether the student loan debts listed on Schedule F would be included in a Chapter 13 plan.

[7]The nine factors that I have traditionally examined in cases under § 707(b)(3) are identical to the factors considered when considering whether the filing of a case constitutes substantial abuse of the prior version of § 707(b). These factors are as follows:
> 1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor engaged in eve of bankruptcy purchases; (7) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code; and (9) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter, and other necessities.

*In re Miller,* 302 B.R. 495 (Bankr. M.D. Pa. 2003)(citing *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1988) and *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991)). In *Miller* I stated that I would not automatically dismiss a case solely because a debtor's monthly income exceeded his expenses, but would consider whether a debtor can repay to unsecured creditors either: (1) a significant *percentage* of his total unsecured debt, or (2) a significant *amount* of money regardless of the percentage that would be paid. *Miller*, 302 B.R. at 500.

whether Debtors' proposed family budget is excessive or unreasonable).  It is silent as to matters such as the precipitating cause of Debtors' bankruptcy petition, the nature and extent of their consumer purchases pre-petition, the accuracy of their statements and schedules, and their good or bad faith. Debtors provided no evidence that other necessary and reasonable expenses have been incurred that would reduce or eliminate their significant disposable income. In light of my finding that Debtors can easily repay all of their unsecured debt through a Chapter 13 plan within thirty-six months, Debtors case will be dismissed unless they elect to convert to Chapter 13.

    An appropriate order will be entered.

                      **By the Court,**

*/s/ Mary D. France*
Chief Bankruptcy Judge

Date:  March 25, 2011